Noah Kane [NJ No. 428282023]
KANE LAW FIRM LLC
550 Kinderkamack Rd, Ste 124
Oradell, NJ 07649
T: (267) 832-2657
E: noah@njconsumer.com
*Attorney for Plaintiff James Leone*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(TRENTON VICINAGE)**

| | |
|---|---|
| **JAMES LEONE,**<br><br>*Plaintiff,*<br><br>v.<br><br>**FORWARD RISK AND INTELLIGENCE, INC. D/B/A FORWARD GLOBAL;** and **PRIME PENSIONS, INC.,**<br><br>*Defendants.* | Civil Action No.: 3:26-cv-14494<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff James Leone ("Plaintiff" or "Mr. Leone"), by and through undersigned counsel, brings this action against Defendants Forward Risk and Intelligence, Inc., doing business as Forward Global ("Forward") and Prime Pensions, Inc. ("Prime"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA"), and alleges as follows:

## PARTIES

1. Plaintiff James Leone is a natural person residing in Toms River, Ocean County, New Jersey. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

2. Defendant Forward Risk and Intelligence, Inc. is a Delaware corporation registered with the District of Columbia Department of Licensing and Consumer Protection as a foreign business corporation, with its principal place of business at 1010 Wisconsin Avenue NW, Suite

710, Washington, DC 20007. It does business under the trade names “Forward Global” and “Forward Risk,” and is part of the Forward Global group of companies.

3. Forward regularly engages, for monetary fees, in the practice of assembling and evaluating information on consumers—including criminal and civil court records, social-media content, employment and education history, and “adverse or ‘red flag’ media”—for the purpose of furnishing reports to third parties, including employers, and it uses means and facilities of interstate commerce to prepare and furnish those reports. Forward is therefore a “consumer reporting agency” within the meaning of 15 U.S.C. § 1681a(f).

4. Forward holds itself out as a consumer reporting agency. Prime’s disclosure and authorization forms identify Forward by name as the “Consumer Reporting Agency” from which Mr. Leone’s report would be ordered; Forward delivered its report on Mr. Leone to Prime for the express purpose of Prime’s hiring decision; and Forward’s February 26, 2026 “Notice of Results of Reinvestigation” recites that it was issued “pursuant to the Fair Credit Reporting Act and the New Jersey Fair Credit Reporting Act” and describes Mr. Leone’s rights to a statement of dispute, to notification of prior recipients, and to a description of reinvestigation procedures—rights that exist under 15 U.S.C. § 1681i and its New Jersey analogue, N.J.S.A. 56:11-36.

5. Defendant Prime Pensions, Inc. is a New Jersey corporation with its principal place of business at 25B Vreeland Road, Suite 209, Florham Park, Morris County, New Jersey 07932. Prime provides third-party retirement-plan administration, recordkeeping, actuarial, and compliance services to employers nationwide.

6. Prime is a “person” within the meaning of 15 U.S.C. § 1681a(b), and it procured and used a consumer report on Mr. Leone “for employment purposes” within the meaning of 15 U.S.C. § 1681a(h), i.e., “for the purpose of evaluating a consumer for employment.”

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, because this action arises under the laws of the United States.

8. This Court has personal jurisdiction over Prime because Prime is organized under New Jersey law and maintains its principal place of business in Florham Park, New Jersey. This Court has personal jurisdiction over Forward because Forward purposefully directed its conduct at New Jersey: it contracted with a New Jersey employer to investigate a New Jersey resident for a New Jersey-based position, searched New Jersey court records, and delivered its report into New Jersey, and Plaintiff's claims arise directly from that conduct.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Prime resides in this District and a substantial part of the events giving rise to the claims—the procurement and use of the report, the adverse action, and the resulting harm to Plaintiff—occurred in this District.

10. Because Plaintiff resides in Toms River, Ocean County, this action is properly allocated to the Trenton vicinage under Local Civil Rule 40.1.

## STATUTORY FRAMEWORK

### *The FCRA Requires a Consumer Reporting Agency to Assure Maximum Possible Accuracy*

11. Section 1681e(b) of the FCRA provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

12. 15 U.S.C. § 1681e(b). The standard is "maximum possible accuracy," not mere technical accuracy. A report is inaccurate under the FCRA when it is either patently incorrect or, though technically accurate, presented in a way that "create[s] a materially misleading

impression." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014); see also *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708–09 (3d Cir. 2010). Whether a procedure is reasonable is judged by what a reasonably prudent person would do under the circumstances, weighing the potential harm from inaccuracy against the burden of safeguarding against it. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).

***The FCRA Imposes Heightened Duties When Public-Record Information Is Reported for Employment Purposes***

13. Section 1681k(a) imposes additional, strict obligations on any consumer reporting agency that furnishes public-record information for employment purposes:

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall— (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a).

14. Congress thus gave screening companies a choice: tell the consumer, in real time, that adverse public-record information is going to his prospective employer—so he can act before the employer does—or else maintain "strict" procedures to ensure that what is reported is complete and current. Forward did neither.

***The FCRA Requires a Reasonable Reinvestigation of Disputed Information***

15. Section 1681i(a)(1)(A) provides that if the completeness or accuracy of any item of information in a consumer's file is disputed by the consumer and the consumer notifies the agency directly of the dispute, the agency "shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file," generally within thirty days. 15 U.S.C. § 1681i(a)(1)(A). In doing so the agency "shall review and consider all relevant information submitted by the consumer." Id. § 1681i(a)(4). Information found to be "inaccurate or incomplete or cannot be verified" must be promptly deleted or modified. Id. § 1681i(a)(5)(A).

16. A consumer reporting agency may decline to reinvestigate only if it reasonably determines that the dispute by the consumer is frivolous or irrelevant, and then only if it notifies the consumer of that determination not later than 5 business days after making such determination, stating the reasons and identifying any information required to investigate the disputed information. 15 U.S.C. § 1681i(a)(3)(A)–(C).

17. The Third Circuit has long held that the reinvestigation duty is a "grave responsibility" that "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Where, as here, the consumer's dispute puts the accuracy of a reported court disposition in issue and the court's own record is readily available, a reinvestigation that merely re-reads the secondary source that produced the error is not reasonable.

***The FCRA Requires Employers to Provide Notice Before Taking Adverse Action on a Consumer Report***

18. Section 1681b(b)(3)(A) provides:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report,

> the person intending to take such adverse action shall provide to the consumer to whom the report relates— (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

19. 15 U.S.C. § 1681b(b)(3)(A). "Adverse action" in the employment context means "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). The purpose of the pre-adverse-action requirement is to give the consumer a meaningful opportunity to review the report and to correct inaccuracies—or to explain the circumstances—before the employer acts on it. *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 318–19, 324 (3d Cir. 2018) (employer's failure to provide the applicant a copy of his report before acting on it is a concrete injury). The requirement is not satisfied by a telephone call announcing a decision already made.

### *Willful Violations Carry Statutory and Punitive Damages*

20. A person who willfully fails to comply with any requirement of the FCRA is liable for actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and attorneys' fees and costs. 15 U.S.C. § 1681n(a). A person who negligently fails to comply is liable for actual damages and attorneys' fees and costs. 15 U.S.C. § 1681o(a). "Willful" includes reckless conduct—action "entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 68–69 (2007).

## FACTUAL ALLEGATIONS

### *Prime Offers Mr. Leone an Executive Position, Contingent on a Background Check*

21. Mr. Leone is an information-technology executive with roughly three decades of experience, including senior roles as an IT Director and as a Security and Network Operations Center manager.

22. In late 2025, through the executive-search firm Overture Partners, Mr. Leone interviewed for the position of Chief Information Officer at Prime. After multiple rounds of interviews, Prime selected him.

23. By letter dated January 6, 2026, signed by Prime's President and Chief Executive Officer, Scott Feit, Prime offered Mr. Leone the position of Chief Information Officer, remote, with a start date of January 20, 2026, a base salary approximately $40,000 per year higher than his then-current compensation, eligibility for a discretionary annual bonus of up to ten percent of base salary beginning with the 2026 calendar year, and participation in Prime's benefit programs, including health insurance and a 401(k) plan with profit-sharing contributions (the "Offer Letter"). The Offer Letter stated that employment was subject to the successful completion of a background check.

24. Mr. Leone signed and accepted the Offer Letter the same day, January 6, 2026.

25. On January 7, 2026, Prime's Operations Manager, Matt Dranzik, welcomed Mr. Leone "to the Prime Pensions team," and Prime sent him, through DocuSign, an employment record and a packet of FCRA forms titled "Consumer Report Disclosure," "Investigative Consumer Report Disclosure," and "Authorization to Obtain Consumer or Investigative Consumer Reports" (the "Disclosure and Authorization Forms"). Prime's Disclosure and Authorization Forms stated that Prime "may … obtain or have prepared one or more consumer report(s) for employment purposes," identified the "Consumer Reporting Agency" as "Forward Risk and Intelligence" at 1010 Wisconsin Avenue NW, Suite 710, Washington, DC, and recited that Prime had provided Mr. Leone "a summary of my rights under the federal Fair Credit Reporting Act."

26. Mr. Leone signed the Disclosure and Authorization Forms on January 7, 2026, and the same day completed a separate DocuSign packet sent by Forward Global.

### *Forward Delivers a Report That Attributes a Stranger's Social-Media Account to Mr. Leone and Misreports a Guilty Plea to Harassment*

27. On January 21, 2026, Forward delivered to Prime an eight-page memorandum captioned "Re: James Leone" (the "Report"). The Report stated that Forward "was engaged by Prime Pensions Inc. ('the Client') to conduct research on" Mr. Leone and that it "contains findings of an adverse, risk-relevant, or noteworthy nature." Forward compiled the Report, for a fee, by searching court records, social media, media databases, sanctions lists, and third-party data aggregators, and it furnished the Report to Prime for use in deciding whether to employ Mr. Leone. The Report is a "consumer report" within the meaning of 15 U.S.C. § 1681a(d), furnished for "employment purposes" within the meaning of 15 U.S.C. § 1681a(h).

28. Under the heading "Social Media Profiles," the Report stated that Forward had identified an X (formerly Twitter) profile "for Leone," at the handle @leonejames, and that its review of that profile had "identified the following adverse content."

29. The Report then devoted roughly two full pages to that X account. Under the heading "Leone Restricted on Facebook for Content Which Portrayed Children in Sexual Way (2024)," it stated that "Leone posted a screenshot on Twitter which showed that his Facebook account had been 'restricted' for sharing content in March 2020 which 'shows children in a sexual way,'" reproduced the screenshot, and reproduced the underlying image, which the Report described as depicting "a dog 'humping' a young boy while another young boy lowers his pants in the background." Under the heading "Leone Regularly Engages in Inflammitory [sic] Political Discourse Online (2016 – 2025)," the Report stated that "[s]ince 2016, Leone has regularly used his Twitter account" to post inflammatory political content, quoting more than a dozen posts, including one calling for the "[d]eath penalty" for a sitting United States Senator.

30. Rather than just flagging the content or account and *potential* match, the Report went so far as to make judgments about Plaintiff and affirmatively state that Plaintiff, himself, had and "regularly" made such "Inflammitory [sic]" and depraved posts.

31. **None of that content was Mr. Leone's.** Mr. Leone has never registered, owned, operated, or authorized a Twitter or X account under any name. The @leonejames X account belongs to someone else.

32. Forward did nothing to verify that the @leonejames X account belonged to Mr. Leone. Mr. Leone's personal website, jimleone.com—which Forward cited in the Report—links only to the social-media accounts he actually controls and lists no X account. Forward did not contact Mr. Leone. Forward did not compare the account's content, photographs, or metadata to any verified identifier or contact X. Forward simply matched a handle to a surname and published, to Mr. Leone's prospective employer, an accusation that he had shared child sexual exploitation content.

33. Under the heading "Criminal Records," the Report stated, under the sub-heading "Leone Charged with Harrassment [sic] (2018)":

> State of New Jersey v. James Leone, case no. S 2018 67 (Point Pleasant Borough Municipal Court; filed on June 4, 2018). In April 2018, Leone was charged with harassment in a manner to cause alarm in Point Pleasant, NJ stemming from an unidentified incident in March 2018. In June 2018, Leone pleaded guilty to the charge, and paid a $288 fine, closing the case. Additional information on this case was not available online.

34. That statement is false: Mr. Leone did not plead guilty to harassment, and he has no harassment conviction, nor any conviction of any crime.

35. Forward relied on an online docket summary or third-party database entry, rather than obtaining the court's own record. A search of New Jersey's free, public PROMIS/Gavel

system—then and now—shows no harassment conviction for Mr. Leone and contains other material information showing his record is clear of any criminal conviction.

36. At no time did Forward notify Mr. Leone that it was reporting public-record information about him to Prime, or provide him the name and address of the person to whom that information was being reported, as 15 U.S.C. § 1681k(a)(1) requires in the alternative. Mr. Leone first learned the contents of the Report when Prime called to withdraw his offer.

***Prime Withdraws the Offer by Telephone, Without Providing the Report or a Summary of Rights***

37. On or about January 21 or 22, 2026—within a day of receiving the Report—Prime's Chief Operating Officer, Karthik Mohan, telephoned Mr. Leone and told him that Prime had decided to withdraw the offer of employment based on his background check. Mr. Mohan told Mr. Leone that Prime's partners were concerned specifically about the "social media posts" and the "harassment conviction" reflected in the Report.

38. Mr. Leone told Mr. Mohan that the information was wrong—that the social-media account was not his, he could prove it, and that he had no harassment conviction, and he could prove that, too.

39. Prime did not offer him any opportunity to review the Report, to dispute it, or to provide the court record before the termination. The decision had been made.

40. Prime did not provide Mr. Leone a copy of the Report before taking that adverse action. Nor did Prime provide him a written description of his rights under the FCRA in connection with that adverse action; the only summary of rights Prime ever furnished accompanied the January 7, 2026, Disclosure and Authorization Forms, two weeks before any report existed and

before any adverse action was contemplated. Prime provided him neither document afterward, either. Mr. Leone had to obtain the Report himself, from Forward, a week later.

41. Before Mr. Leone had seen the Report, Prime also communicated the withdrawal of his offer to Overture Partners, the recruiting firm that had placed him, informing the recruiters that the offer had been withdrawn and that the opportunity was no longer available to him. Overture Partners stopped responding to Plaintiff.

42. Upon information and belief, Prime communicated the wildly defamatory information to Overture Partners, leading them to sever connections with Plaintiff and cease communicating or responding to him, and leading Plaintiff to lose out on potential future business opportunities or recruitment through that recruiter.

43. On January 22, 2026, Mr. Leone wrote to Mr. Mohan thanking him for the call and stating that the information would allow him "to follow up with the background check provider to better understand and address any inaccuracies in the report." He later wrote again asking whether there was any path to preserving the offer once the inaccuracies were corrected. Prime never responded nor offered such a path to reinstatement.

44. Prime knew its obligations. Its own Disclosure and Authorization Forms—which Mr. Leone signed two weeks earlier—recite the FCRA by name, describe Forward as a "Consumer Reporting Agency," certify that Prime had furnished a "summary of … rights under the federal Fair Credit Reporting Act," and authorize Prime "to provide me with a copy of my consumer report and any other documents required by law." Prime had a form for the pre-adverse-action notice; it simply did not use it. Its failure to follow the plain, decades-old command of § 1681b(b)(3), which is aimed at providing potential employees like Mr. Leone a reasonable opportunity to dispute and correct false information, was at minimum reckless.

***Mr. Leone Disputes the Report and Forward Fails to Correct It***

45. On January 23, 2026, Mr. Leone emailed Forward at forwardinvestigations@forwardglobal.com requesting, "pursuant to my rights under the Fair Credit Reporting Act," a complete copy of the report provided to Prime. Forward did not respond. He followed up on January 28, 2026, and later that morning Forward sent him the Report.

46. The same day, January 28, 2026, Mr. Leone sent Forward three written disputes. Among other things, he disputed the "Misattributed Social Media / X (Twitter) Account," and the reported "harassment" conviction. Before sending his written disputes, Mr. Leone had also disputed the Report's harassment and social-media findings with Forward by telephone.

47. Mr. Leone specifically asked Forward to look at the disposition of the falsely reported harassment conviction, which was readily available.

48. On January 29, 2026, Mr. Leone sent Forward a further written request for disclosure of the sources Forward had relied on, and for correction of the Report. Forward replied that "[o]ur team is reviewing your requests" and "[w]e will revert in the coming days." It did not.

49. When Mr. Leone followed up on February 18, 2026—three weeks after his disputes—Forward finally responded on February 23, 2026, by demanding, for the first time, his date of birth and Social Security number or driver's license number to "verify [his] identity," in connection with his source-disclosure request.

50. On February 26, 2026—twenty-nine days after receiving the disputes—Forward issued a "Notice of Results of Reinvestigation" and a revised report (the "Revised Report").

51. Forward wrote: "This social media account is no longer active; we are no longer able to verify the accuracy of this information. Information related to this item has been deleted."

As to the political-content characterizations (item 2), it wrote only that the information "has been deleted."

52. Forward had previously characterized Plaintiff as someone who had "regularly" engaged in inflammatory and child-sexual content. Forward did not correct that characterization to affirmatively state that Plaintiff is not someone who does such things and does not post publicly.

53. As to Plaintiff's dispute of the harassment disposition, Forward wrote, "We determined that your dispute [] was frivolous or irrelevant and terminated our reinvestigation on that basis. A Notice of Determination notifying you of our determination and any information required to investigate your dispute was previously provided to you." Mr. Leone received no such notice within five business days of any such determination, or at any time before the February 26 results.

54. A reasonable reinvestigation of the disputed harassment conviction required one telephone call or records request to the Point Pleasant Borough Municipal Court.

55. Forward made no such call. The Revised Report, which Forward sent to Mr. Leone on February 27, 2026, continued to state under "Criminal Records" that "[i]n June 2018, Leone pleaded guilty to the charge" of harassment "and paid a $288 fine." Forward "verified" that falsehood by doing nothing. See *Cushman*, 115 F.3d at 225.

***Forward's Conduct Was Knowing, Willful, and Reckless***

56. Forward is a sophisticated, private-equity-backed investigations firm that markets "background checks," "candidate vetting," and "review of social media presence and content" to employers, and that—as its FCRA-styled notices, summaries of rights, and reinvestigation procedures confirm—knows it is a consumer reporting agency subject to the FCRA.

57. Forward knew that attributing social-media content to a subject requires confirming that the account is the subject's, but it cited his own website, which showed the X account was not his. It knew that a third-party docket summary is not a disposition; it said that further information "was not available online," even though it was. It knew that the information it was reporting—child sexual exploitation content and a harassment conviction—was among the most damaging accusations that can be made against a candidate for an executive position. And it knew that § 1681k(a) required it either to notify Mr. Leone contemporaneously or to maintain strict procedures ensuring completeness and currency, because the statute has said so since 1970.

58. Forward nonetheless published the Report without a contemporaneous notice to Mr. Leone and without obtaining the court record, deemed his dispute "frivolous," and re-published the harassment falsehood after being told it was wrong. That conduct entailed an unjustifiably high risk of harm that was known or so obvious that it should have been known. *Safeco*, 551 U.S. at 68–69.

***Plaintiff Suffered Actual Harm***

59. As a direct and proximate result of Defendants' conduct, Mr. Leone lost the Chief Information Officer position at Prime, with its base salary, bonus eligibility of up to ten percent of base salary, health benefits, and 401(k) and profit-sharing contributions.

60. Mr. Leone has since continued working in a position that pays approximately $40,000 per year less than the Prime position, without comparable bonus eligibility—a loss that recurs every year he remains out of the executive role he had earned.

61. Not only that, but because Mr. Leone knew his background should have cleared, in an event to be fair, he had given notice of the pending new position to his then-employer, leading him to have to return to the position humiliated and humbled. Since then, he was in consideration

for the CIO position at that former employer, but has not been promoted, and Mr. Leone worries that the episode with the noticed and botched departure plays a factor.

62. Mr. Leone suffered severe reputational harm. Prime's partners and executives, and the recruiters at Overture Partners who had placed him, were told that his offer was withdrawn because of a background check reflecting a "harassment conviction" and extremely problematic, child-sexual "social media posts." In the executive-search market in which Mr. Leone competes, a withdrawn C-level offer on those grounds is a stain that follows him.

63. Mr. Leone was told on the phone by the Chief Operating Officer of Prime that the Report and its vile and inaccurate characterization of Mr. Leone had been communicated to the entire Board, and that it made the Board uncomfortable, to the extent that they withdrew the offer. The COO specifically noted that the inaccurate harassment guilty plea, and Forward's vile and inaccurate characterization of how Mr. Leone used social media, was communicated to the Board and was what made them uncomfortable and withdraw the offer. Mr. Leone was dumbfounded.

64. Mr. Leone suffered substantial emotional distress, including humiliation, anxiety, embarrassment, anger, frustration, and sleeplessness, from being told by a prospective employer that he had been rejected as a purveyor of child sexual exploitation content and as a convicted harasser; from being denied any chance to answer those accusations before the decision was made; and from Forward's dismissal of his dispute as "frivolous."

65. Mr. Leone expended substantial time and effort requesting the Report, drafting and submitting disputes, following up on Forward's silence, following up with X who since confirmed the account was not Mr. Leone's and even deleted the account during the relevant time period, and later apologized, and obtaining the certified disposition from the municipal court.

**COUNT I**
**15 U.S.C. § 1681e(b)**

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy (Against Forward)**

66. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

67. Forward is a consumer reporting agency, and the Report and the Revised Report are consumer reports, within the meaning of 15 U.S.C. § 1681a(d) and (f).

68. The Report and the Revised Report contained information about Mr. Leone that was inaccurate and materially misleading, as detailed above.

69. Forward failed to follow reasonable procedures to assure the maximum possible accuracy of that information, including by (a) attributing a social-media account to Mr. Leone that did not belong to him, on the basis of a name match alone and despite conflicting posts indicating the account did not belong to Plaintiff; (b) reporting the disposition of a court matter from an online summary while admitting that "[a]dditional information on this case was not available online," rather than obtaining the court's disposition, which showed no such conviction; and (c) re-publishing the harassment statement in the Revised Report after Mr. Leone had disputed the Report's accuracy and completeness.

70. Forward's violations were willful, rendering it liable for actual damages or statutory damages, punitive damages, and attorneys' fees and costs under 15 U.S.C. § 1681n. In the alternative, Forward's violations were negligent, rendering it liable for actual damages and attorneys' fees and costs under 15 U.S.C. § 1681o.

71. As a direct and proximate result of Forward's violations, Mr. Leone suffered the actual damages described above.

**COUNT II**
**15 U.S.C. § 1681k(a)**

**Failure to Notify the Consumer or to Maintain Strict Procedures for Public-Record Information Reported for Employment Purposes**
**(Against Forward)**

72. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

73. Forward furnished the Report to Prime for employment purposes, and for that purpose compiled and reported items of information about Mr. Leone that are matters of public record and that were likely to have an adverse effect on his ability to obtain employment. The harassment entry in particular was likely to, and did, have that effect.

74. Forward did not, at the time it reported that public-record information to Prime, notify Mr. Leone of the fact that public-record information was being reported, together with the name and address of the person to whom it was being reported, as required in the alternative by 15 U.S.C. § 1681k(a)(1).

75. Forward did not maintain strict procedures designed to ensure that the public-record information it reported was complete and up to date, as required by 15 U.S.C. § 1681k(a)(2). Forward reported the 2018 matter as a guilty plea to harassment without obtaining the court's disposition and while admitting that further information was unavailable to it online; the current public-record status of the matter at the time of the Report—an amended ordinance violation—was not reported. The information was therefore neither complete nor up to date within the meaning of § 1681k(a).

76. Forward's violations were willful, rendering it liable for actual damages or statutory damages, punitive damages, and attorneys' fees and costs under 15 U.S.C. § 1681n. In the alternative, Forward's violations were negligent, rendering it liable for actual damages and attorneys' fees and costs under 15 U.S.C. § 1681o.

77. As a direct and proximate result of Forward's violations, Mr. Leone suffered the actual damages described above.

**COUNT III**
**15 U.S.C. § 1681i**
**Failure to Conduct a Reasonable Reinvestigation**
**(Against Forward)**

78. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

79. On January 28 and 29, 2026, Mr. Leone notified Forward directly, in writing and by telephone, that he disputed the completeness and accuracy of information in his file, including the attribution of the X account to him and the false harassment conviction. He had previously disputed the same information by telephone.

80. Forward failed to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate, in violation of 15 U.S.C. § 1681i(a)(1)(A), including by (a) failing to take any step to determine whether the X account belonged to Mr. Leone, and neither affirmatively amending its reporting nor determining that the information was inaccurate; (b) failing to obtain the disposition of the 2018 municipal court matter or otherwise to verify the "guilty" plea it had reported, and re-publishing that statement in the Revised Report; and (c) terminating its reinvestigation of items 3 and 5 altogether as "frivolous," in violation of the FCRA.

81. Forward failed to review and consider all relevant information submitted by Mr. Leone, in violation of 15 U.S.C. § 1681i(a)(4), including his statements that a known online malfeasant had been arrested for opening accounts such as the subject X account and offers to back it up with police records, that his personal website identifies his actual accounts, and that the Report's legal references lacked complete disposition information.

82. Forward's determination that Mr. Leone's disputes as to items 3 and 5 were "frivolous or irrelevant" was not reasonable, in violation of 15 U.S.C. § 1681i(a)(3)(A), and Forward failed to notify Mr. Leone of that determination within five business days, with the reasons for it and the information required to investigate, in violation of 15 U.S.C. § 1681i(a)(3)(B)–(C).

83. Forward failed to promptly delete or modify information that was inaccurate, incomplete, or could not be verified, in violation of 15 U.S.C. § 1681i(a)(5)(A), by retaining in the Revised Report the statement that Mr. Leone "pleaded guilty to the charge" of harassment.

84. Forward's violations were willful, rendering it liable for actual damages or statutory damages, punitive damages, and attorneys' fees and costs under 15 U.S.C. § 1681n. In the alternative, Forward's violations were negligent, rendering it liable for actual damages and attorneys' fees and costs under 15 U.S.C. § 1681o.

85. As a direct and proximate result of Forward's violations, Mr. Leone suffered the actual damages described above, including economic damages, emotional damages, and reputational damages including the continued presence in his file of a false harassment conviction.

**COUNT IV**
**15 U.S.C. § 1681b(b)(3)(A)**
**Failure to Provide Pre-Adverse-Action Notice**
**(Against Prime)**

86. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

87. Prime procured the Report from Forward, and used it, for employment purposes within the meaning of 15 U.S.C. § 1681a(h) and § 1681b(b).

88. Prime took adverse action against Mr. Leone within the meaning of 15 U.S.C. § 1681a(k)(1)(B)(ii)—the withdrawal of his offer of employment and the denial of employment—based in whole or in part on the Report.

89. Before taking that adverse action, Prime did not provide Mr. Leone a copy of the Report, in violation of 15 U.S.C. § 1681b(b)(3)(A)(i).

90. Nor did Prime provide Mr. Leone, in connection with that adverse action, a written description of his rights under the FCRA as prescribed by the Consumer Financial Protection Bureau under 15 U.S.C. § 1681g(c)(3) and 12 C.F.R. pt. 1022, app. K, in violation of 15 U.S.C. § 1681b(b)(3)(A)(ii). (The summary that accompanied the January 7, 2026, authorization forms preceded the Report and was not provided with, or as notice of, any contemplated adverse action.)

91. Prime's violation deprived Mr. Leone of the opportunity the statute guarantees: to review the Report, to tell Prime before it acted that the X account was not his and that he had not, in fact, pleaded guilty to or been convicted of harassment, and to supply the court record and other public records that proved it. Had Prime complied, Mr. Leone could have conclusively corrected both items before any decision was made. Instead, Prime decided, announced its decision to Mr. Leone and to his recruiters, and never looked back.

92. Prime's violation was willful. Prime knew the FCRA governed its use of the Report—its own Disclosure and Authorization Forms invoke the statute, describe Forward as a "Consumer Reporting Agency," recite that Prime had furnished a summary of FCRA rights, and contemplate Prime providing Mr. Leone "a copy of my consumer report and any other documents required by law." Longstanding caselaw in this Circuit makes clear that pre-adverse-action notices are required to give a reasonable time period to correct errors. See *Long*, 903 F.3d at 318 (the pre-adverse-action requirement exists to give the applicant time to respond to the report before the

employer acts on it); *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537–39 (E.D. Pa. 2012); *see also* FTC Staff Opinion Letter to Weisberg (June 27, 1997). Prime nonetheless withdrew the offer by telephone, on the strength of the Report, without providing either document. Prime is therefore liable for actual damages or statutory damages, punitive damages, and attorneys' fees and costs under 15 U.S.C. § 1681n. In the alternative, Prime's violation was negligent, rendering it liable for actual damages and attorneys' fees and costs under 15 U.S.C. § 1681o.

93. As a direct and proximate result of Prime's violation, Mr. Leone suffered the actual damages described above, including the loss of the Chief Information Officer position and its compensation, reputational harm, and emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James Leone respectfully requests that the Court enter judgment in his favor and against Defendants, and award:

a. actual damages against Forward and Prime, jointly and severally to the extent permitted by law, in an amount to be determined at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

b. in the alternative to actual damages for willful noncompliance, statutory damages against Forward and Prime of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c. punitive damages against Forward and Prime in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n(a)(2);

d. reasonable attorneys' fees and costs of suit pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

e. pre-judgment and post-judgment interest as permitted by law; and

f. such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, the undersigned certifies that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

Pursuant to Local Civil Rule 201.1(d)(3), the undersigned certifies that the damages recoverable in this action exceed the sum of $150,000, exclusive of interest and costs and any claim for punitive damages, and that this action is therefore not eligible for compulsory arbitration. I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Dated: November 9, 2026

Respectfully submitted,

*/s/ Noah Kane*
Noah Kane [NJ No. 428282023]
KANE LAW FIRM LLC
550 Kinderkamack Rd, Ste 124
Oradell, NJ 07649
T: (267) 832-2657
E: noah@njconsumer.com

*Attorney for Plaintiff James Leone*